**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRCT OF COLORADO**

Criminal Action No. 13-cr-00218-02

**UNITED STATES OF AMERICA**

 **Plaintiff,**

v.

1. Joseph M. Ferrara,
  *a/k/a* "Dr. Joe",
**2. Keith Schwartz,
  *a/k/a* "Bernie Kype",**
3. Lauren Schwartz,
4. Karyne Smith
  *a/k/a* "Karyne Clark",
5. Karen Plaia,
6. Melissa Toothman

 **Defendants.**

---

**GOVERNMENT'S RESPONSE TO DEFENDANT KEITH SCHWARTZ'S MOTION
FOR RECONSIDERATION - ORDER OF DETENTION**

---

The United States of America, by United States Attorney John F. Walsh, and through Assistant United States Attorney M. J. Menendez and Special Assistant United States Attorney Alison Goldenberg, hereby responds to the Defendant's Motion for Reconsideration – Order of Detention. The Government asks the Court to deny the Defendant's motion. The Defendant's Motion for Reconsideration – Order of Detention argues significant ties to the community, family obligations, work obligations, age of felony convictions, prior willingness to assist authorities, minimal involvement in the crime and ability to post a cash bond as previously unknown factors that warrant reconsideration of detention. The Government disputes many of these claims. The

Government further alleges that the information now posited in support of the claim that Defendant does not pose a risk of non-appearance was known at the time of the drafting of the Presentence Investigation Report, and was also known on the date of the detention hearing held on June 4, 2013.  Accordingly, no grounds exist to reopen detention.  If the Court finds that sufficient grounds do exist to reopen detention, the Government argues that Defendant Keith Schwartz 's managerial role in the offense, family circumstances, and prior criminal record of fraudulent activities and drug trafficking, coupled with the twenty year minimum mandatory sentence the Defendant faces if convicted on Court One, render the Defendant a risk of non-appearance warranting continued detention.

Under 18 U.S.C. § 3142(f)(2)(B), a judicial officer may reopen a bond hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of the community."  "Consequently, the information must be both material and must not have been known to the movant at the time of the first hearing.  If both parts of the test are not met, the judicial officer then may decline to reopen a bond hearing." *United States v. Zapata-Hernandez*, 2006 WL 1659472, *2 (D.Colo. 2006)(unpublished.)

In *United States v. Dillon*, 938 F.2d 1412 (1st Cir. 1991), a similar motion to reopen the issue of bond was addressed.  Defendant Dillon  proffered affidavits from a number of individuals who averred that the defendant was not a flight risk and was of good character.  Defendant Dillon's father offered his house as security for a bond.  The

district court denied bond, reasoning that the information contained in the affidavits was available and could have been offered at the initial detention hearing and was, therefore, known to the movant.  The United States Court of Appeals for the First Circuit affirmed the decision to not reopen the bond hearing without further comment.  In the previously discussed opinion by Magistrate Judge Coan in *United States v. Zapata-Hernandez*, 2006 WL 1659472 (D.Colo. 2006)(unpublished), Magistrate Judge Coan denied a motion to reopen detention after Mr. Zapata-Hernandez filed a motion claiming that ability to post security for bond and positive witness testimony to be proffered was new information.  Magistrate Judge Coan found that such information was not new material information as it was available to the defendant at the time of his initial detention hearing.

The Government refutes the following assertions made by the Defendant, and has attached documentary evidence in support of its position:

● *Defendant claims:  Upon information and belief, the defendant is not charged nor is there any evidence to indicate that he had at any time distributed or assisted in the distribution of illicit prescription drugs to any member of the general public.  The defendant was not a member of Dr. Ferrara's staff, nor did he participate in the writing of prescriptions for the charged controlled substances.*

Defendant Keith Schwartz admittedly does not have a medical license.  He was, however, the originator and co-creator of the pain management business, an investor, business partner, manager and in his own words, "advertiser or marketer" for the business.  Defendant Keith Schwartz managed finances of the business, advised Dr. Ferrara's staff on approaches and methods to control the clientele, advised Dr. Ferrara's staff on the need for meticulous record-keeping to avoid DEA scrutiny, and advised and consulted with Dr. Ferrara directly and regularly about appropriate amounts

of pain medications that should be prescribed.   Keith Schwartz even spoke with at least one patient directly to advise him of how Dr. Ferrara's prescribing practice with that patient would be amended.  The following information provides a snapshot of Keith Schwartz's role and daily working in the Ferrara "pain management" organization:

In May of 2011, Defendant Keith Schwartz  initiated contact with recently- indicted Defendant Kevin Clemmer who was incarcerated at the FDC –Englewood to purchase Clemmer's patients.  Dr. Kevin Clemmer was being held in Pretrial Detention after being indicted in Case Number 11-CR-00200-REB on multiple counts alleging violation of 21 United States Code, Section 841(a)(1) for prescribing controlled substances outside the usual course of practice and for a purpose other than a legitimate medical purpose.  On May 23, 2011, Keith Schwartz using the alias of "Bernie Kype", sent a letter to Dr. Clemmer at his home address soliciting the purchase of his patients.  Keith Schwartz's letter is attached as Government's Exhibit 1.  The letter is signed "Bernie Kype", painmangementdoc@gmail.com with a contact telephone number of (970) 281-2052, which is a telephone number associated with Dr. Ferrara's practice where he  was doing business as Central Rockies OB / GYN.

On May 27, 2011, Dr. Kevin Clemmer placed a collect call to "Bernie Kype", or Keith Schwartz.  Keith Schwartz answered the phone and he engaged in the brokering of the deal with Dr. Kevin Clemmer to purchase his patients.  During the call, Keith Schwartz stated, "…I work for a pain management doctor who would be interested in taking over, uh, some of your duties of your patients, and then obviously paying you for, for that

coming with some type of financial arrangement." The transcript from the recorded call Dr. Clemmer made from the FDC-Englewood to Keith Schwartz is attached as Government's Exhibit 2.

During the week of May 30 through June 3, 2011, Keith Schwartz contacted the DEA under the alias "Bernie Kype" to ask whether the DEA was offering any on-line diversion courses. The DEA Investigator who answered the telephone told "Bernie Kype" that no such courses were currently being offered, and he asked "Mr. Kype" to articulate the specific information or type of information he was requesting. "Bernie Kype" / Keith Schwartz told the investigator that Dr. Ferrara wanted to know the specific parameters set by the DEA regarding prescribing pain medications. Mr. Kype was given a general answer. He told the investigator that he would find the information he sought on-line or on the internet, and the call terminated.

In an effort to identify "Bernie Kype", the Diversion Investigator who took Mr. Kype's initial call returned a call to him on the next day. The DEA Investigator told "Mr. Kype" that that written materials about practicing pain management and prescribing prescription narcotics would be compiled for him at the DEA headquarters. When "Bernie Kype" was told he would have to come to the DEA and produce identification to get the materials, he stated he would send an individual named "Kristin" to get the materials. When he was told an identification would have to be provided to pick up the materials, "Mr. Kype" said he would send a photocopy of his Colorado Driver's license. The materials were compiled, but no one showed to retrieve the materials. . A written report documenting "Bernie Kype's" inquiry to the DEA is attached as Government's Exhibit 3.

During the thirty day period of interception on Keith Schwartz's telephone which was authorized to commence on November 11, 2011, Keith Schwartz directed office staff, counseled Dr. Ferrara on issuance of prescriptions for Oxycodone and other drugs, and personally spoke with at least one patient to advise Dr. Ferrara was cutting down his supply. The Government has attached transcripts from the cited calls as exhibits, but also cites pertinent excerpts of the calls for the Court's consideration:

Transcript from Call 30; Government's Exhibit 3.

● Excerpt from *Call Number 30*, occurring on November 16, 2011; conversation between Karyne Smith, office manager / attendant for Joseph Ferrara at Central Rockies, OB / GYN and Keith Schwartz:

> *Keith Schwartz:* Why, Why don't we given him the Oxycodone's when he's ready and Oxycontin's when he's ready so if he got an extra 15 days of Oxycontin from that guy and then he was [u/i] on us for ahh, you know because he didn't see us for that one week or something like that, which would be half of his 15 days so we'd have a do not dispense for 7 days on the Oxycontin and then if the Oxycodone was ready he's be able to get that immediately.

● Excerpt from *Call Number 30* (Gov. Exhibit 3), which was joined by Dr. Ferrara in conversation with Keith Schwartz and Karyne Smith:

> *Joseph Ferrara*: Keith, the whole thing is that he is on big dose of Oxycontin and then he is on Oxycodone breakthroughs every four hours, and I have told him time and time again we've got to get you out to six to eight hours, actually eight hours is the, the most frequent that I can give him. It should be every twelve hours for breakthrough. So he doesn't want to comply with that either and if he is going to come in here and [unintelligible] and pull all kinds of shit again, then we don't want to see him obviously….
>
> *Keith Schwartz*: So **we** cut him down the last time to 144 Oxycodone a month? (Emphasis added)….
>
> *Keith Schwartz*: So, so if you got him that 144 last time, if you knocked him down one more pill a month, uh, this time on it you would get him down to around 110….
>
> *Keith Schwartz*: Hey, OK, so why don't you just text me the, the information, I think I got it. He's gonna have to, Joe wants to cut him down to 100 Oxycodone

6

> a month that he can get now.  And he'll leave the Oxycontin prescription alone but he's gonna have to wait, how many days is he gonna have to wait….
>
> *Keith Schwartz*:  OK, can you just text the basic information while I'm at this phone number and I'll call you, and I'll get that set up for you, and if you have any other patients, that you want me to deal with, please allow me to deal with that because I don't want, I want it to be as smooth as possible **where I want to get rid of a patient.**  (Emphasis added)

Transcript from *Call Number 42*; Government's Exhibit 4

● Excerpts from call between Keith Schwartz and a patient of Dr. Joseph Ferrara whom Smith, Ferrara and Schwartz discussed in Call 30—patient's brief responses are omitted below.

> *Keith Schwartz*:….[Hi _____,] it's Keith from Dr Ferrara's office….
>
> Good.  [Unintelligible] give you a call because uh, the doctor's gonna, he's he pulled up your um, your prescription uh monitoring thing like we talked about last month because you got that script from the other doctor….which is totally fine like we talked about…. But he's going to, obviously he's [unintelligible] you've got those extra pills and he's going to hold, he's going to give you your script today, but he is going to make you, uh, they are not going to be able to dispense it until the amount of days passes for those amount of pills that you got…So you got a fourteen day supply from that other doctor….And the DEA came out with new regulations in regards to breakthrough pain meds, which is your Oxycodone, and he's going to have to take you down to 112 tablets for every 28 days.  About, about three and a half to four tablets a day….Alright so, it's you, it's anybody basically taking break-through medicine that wants to stay within medically accepted practices in the eyes of the government…..I just wanted to give you some heads up so that there wasn't any problem when you saw him today.

Transcript from *Call Number 481*, Government's Exhibit 5:

● Voice mail left for Keith Schwartz by Central Rockies OB/GYN employee Melissa Toothman:

> *Melissa Toothman*:  Hi Keith, it's Melissa Toothman  I was just calling because, um, I had another patient call this morning regarding needing his scripts filled early.  Um, he is leaving out of town to do a job on the gulf shore, on the oil rigs.  Um, and he is due to sail on Saturday , but he is leaving tomorrow morning.  Um, and he's freaking out.  So, I did tell him we don't refill, or fill prescriptions early.  **But, um, I did get his pharmacy number just in case you would do it.**  Um, if you could call me back, I have the work phone, 303-517-4163.  Thanks.

Transcript from *Call Number 752*, Government's Exhibit 6:

7

● Excerpts from call between Karyne Smith and Keith Schwartz as they discuss the importance of record-keeping and pristine file maintenance:

> *Karyne Smith*:  But I just, I just wanted to let you know because—I, you to know what is going on in the office.
>
> *Keith Schwartz*:  Definitely, always and, and, you know, that goes back from what we've done from the beginning which is, you know, we want to, you know, double and triple and quadruple check, you know, each, each and every time you know, no matter what it takes because we, we know we're going to be flagged.  That's just no question because we took over these other doctors' practices, and so, and then the amount of prescriptions that he is writing out of the blue is definitely gonna, you know, bring up a red flag but just because it brings up a red flag, we want to be able to confidently answer, you know, those concerns in a way, in a way that we, we, when we go to bed at night, know that we're, you know, doing whatever testing or double checking to make sure that we're not getting burned.  So it just goes to the, we should be as strict as humanly possible.  If we come across as somebody who's, uh, I mean anybody who is taking long term opiates for pain management is addicted to the opiates….

● Excerpt in *Call Number 752* where Karyne Smith and Keith Schwartz discuss Dr. Ferrara's efforts to reduce numbers of narcotics prescribed:

> *Karyne Smith*:  I mean, we, we are dropping them Keith, but I mean ultimately half these patients are on way too much medicine and you know that there's, there's got to be something going on.
>
> *Keith Schwartz*:  Well, if they're, if they're, I mean, we've talked about this before in regards to amounts, a, a patient who's in chronic debilitating pain, you know, would be, uh, it the medically accepted amount would be six, 30 mg Oxycodone a day, which, which would be one every four hours and uh, if they're not taking oxycodone as their main, uh, pain management, if they're taking oxycontin then two, 20, 40, 60 or 80 mg oxycontin with a couple of oxycodone for breakthrough….I know that , but when you say he is trying to wean them down, I mean, he's the doctor….

Transcript from *Call Number 853*:  <u>Government's Exhibit 7</u>:

● Excerpt from call wherein Keith Schwartz is directing Karen Plaia on office procedures:

> *Keith Schwartz*:  A couple things, one is that if you can, on the new pain patients up already ah, print out their prescription drug monitoring so you don't have to do that on busy day that would probably make it so you're not stressed out to get that printed out and, and done switching back and forth on the internet, and the

next thing, and then MMJ days, maybe ah, pre-filling out all the ah, MMJ forms so that the date of the physical is on there, that all of the basic information that you would need is on there so when you grab those, all you need to do is fill out the last remaining ah, things and have doc sign and that will save you a lot of effort and time and double-checking that to make sure its actually on there during a stressful situation….

Transcript from *Call Number 1038*:   Government's Exhibit 8:

● Extensive conversation between Keith Schwartz and Joseph Ferrara around prescribing practices.  Excerpt below relates account told to Ferrara's legal counsel by Ferrara about his relationship with Keith Schwartz:

*Keith Schwartz*:  So, if, the, when you talked to the lawyer today, tell me about that conversation.

*Joseph Ferrara*:  Well it was fine.  He just was, you know, right off he says well who is this, you know, Keith Schwartz.  And I told ya, I just told him that basically I gave them the same rendition that you were saying that you know, I, I said that I got involved with you when we were back, and I said if you remember I called you up and was having problems trying to justify, you know why that patient was you know giving us problems and everything else, that made the complaint.  And I said I was then still trying to get into urgent care, doing house calls whatever I could do…And I said that's how I met ya and I said then after that I said we just been parlaying you know, business and all that.  And I, I didn't go into me buying the thing from you….

*Keith Schwartz*:  …we'll deal with that at the time.  But it's, it's important that we, you know, always maintain, you know, that, uh, maintain the fact that you, you're the owner of the doctor's office, the medical practice and all I was ever involved with or worked for was a marketing / advertising.  And that's going to prove, you know, show out to be exactly what did happen, you know, I, you know, you ran the doctor's office.  You saw the patients.  You met with your people working for you and I dealt with the marketing and advertising and for you to do that….

The Government submits that the foregoing statements made by Keith Schwartz as he engaged in the day to day management of Dr. Ferrara's practice at Central Rockies OB /GYN belies his claim that he was not involved in the operation of the business.  It also directly refutes Mr. Schwartz's claim that he was not involved in the care of patients and prescribing of narcotics to those patients.

● *Defendant Keith Schwartz claims the Government cannot demonstrate the Defendant is a danger to the community.*

After the deaths of Ferrara's patients Craig Limberger (not a charged death count in this case) and Peggy Barless (charged death count in this case) around Christmas 2011 / New Years 2012, the Colorado Medical Board began an investigation of Dr. Joseph Ferrara. Karyne Smith, who formerly worked as an office manager / employee / assistant in Central Rockies OB / GYN had left the employ of Central Rockies in the springtime of 2012 because she had a baby. Karyne Smith was at home caring for a relative new-born on October 21, 2012 when Keith Schwartz sent Ms. Smith the following email regarding the Medical Board's investigation of Dr. Ferrara:

> then i will accept a payment plan karyne. I am paying a fortune for your shitty work. A patient is dead and Joe license is in jeopardy. because you did not do your job. I give you the end of the week to get me the first payment. Sell your iPad, sell your car, but make sure i get paid. call doug and have him loan you the money, or hillary, or Cameron.
>
> Take responsibility for your shitty work and do your best to make it right. saying you don't think you did a bad job makes me sick to my stomach. I am giving you the information to show you why you did such a bad job. How can you possible defend it? The medical board says you did a shitty job. "the standard of care looks good, the documentation is terrible." that is from the lawyer for the medical board.

Keith Schwartz's email is attached as <u>Government's Exhibit 9</u>.

Keith Schwartz was the driver and manager of Ferrara's practice, and Joseph Ferrara wrote the prescriptions in consultation with Keith Schwartz. Yet, Defendant Keith Schwartz sends an intimidating email to officer worker Karyne Smith in which he intimidates her, blames her, and demands money. Defendant Schwartz has a history of manipulation and deflection in the business world, including the drug distribution world,

in order to take care of his own interests.  Co-defendants Karyne Smith, Karen Plaia, Melissa Toothman, and Lauren Schwartz are members of the public that should righteously be considered when deciding whether Keith Schwartz poses a risk of danger to the community. The Government believes that Mr. Schwartz's own words and demeanor demonstrate that he is such a risk.

● *Defendant claims that the Defendant's four felony convictions are remote in time, or old, and further argues that he complied with his terms and conditions of supervision in those cases, and also appeared as scheduled in those cases.*

Per the Pretrial Services Bail Report, the Defendant is accurate that his record shows no failure to appear, and shows no history of non-compliance.  The Government argues that the nature and number of the Defendant's convictions are more probative of his risk to the community than his history of appearance and compliance.

The Defendant's has been engaged in fraudulent schemes and acts since 1986. In July of 1986, he was charged with Larceny in Fairfax, Virginia.  The Defendant either pled or was convicted, and he was sentenced to two years suspended prison based on successful completion of a two year probationary sentence.  On March 23, 1990, the Defendant was charged with Possession with Intent to Distribute Controlled Substances.  He either pled or was found guilty, and he was sentenced to ten years in custody; five years of prison suspended and five years of probation.  While the Defendant was serving that sentence, he was charged in West Palm Beach, Florida with Grand Larceny and Dealing in Stolen Property on September 28, 1995.  The case was concluded by nolle prosequi.  Shortly thereafter, on February 16, 1996, the Defendant was charged with Organized Crime / Intent to Defraud and Grand Theft

Felony in Palm Beach, Florida. He was also charged on December 20, 1996, with False and Fraudulent Insurance Claim in Palm Beach City, Florida. The Defendant pled guilty on May 28, 1997 and was sentenced to six months probation. Finally, in August 28, 2001, The Defendant was charged in the United States District Court for the Southern District of Florida with bank fraud. When the conviction entered, the United States District Court ramped up the sentence, as the Defendant was sentenced to thirty days in community corrections, with three years supervised release and 150 days home detention as a condition of probation, and a $5,000.00 fine. Despite the many times the criminal justice system has provided the Defendant with options for community supervision and rehabilitation, the Defendant continues to engage in conspiracies to launder money and distribute narcotics. Whether the Defendant's prior convictions will count in the advisory sentencing guidelines calculation is not the pivotal point of discussion regarding his risk of non-appearance. The Defendant was the driving force behind the conspiracy that distributed narcotics resulting in overdoses, addiction, and at least one death, and he faces a minimum mandatory twenty years if he is convicted. The Defendant's prior exposure to the criminal justice system, coupled with his role in these offenses, makes him a huge risk of flight.

● *Defendant claims he acted in the public interest in attempting to provide proactive cooperation with the government when he learned Dr. Joseph Ferrara's bankruptcy case was under investigation.*

Joseph Ferrara filed for bankruptcy in March 2011 and received a bankruptcy discharge in September 2011. It was not until March 2013, that Keith Schwartz, through his attorney, contacted the United States Attorney's Office claiming to have information

about Joseph Ferrara committing bankruptcy fraud. This communication from Keith Schwartz' attorney coincidentally came within 10 days after I.R.S. special agents working on this criminal investigation had contacted Sulee Rabin, the attorney who represented Joseph Ferrara in his bankruptcy proceedings, to request all non-privileged documents pertaining to the preparation of Joseph Ferrara's bankruptcy schedules filed with the United States Bankruptcy Court. Sulee Rabin later told investigators that she reached out to Keith Schwartz in an attempt to get in touch with Joseph Ferrara after being contacted by federal investigators about Joseph Ferrara. Sulee Rabin stated to investigators that Keith Schwartz was a good friend of Joseph Ferrara and she communicated to Keith Schwartz that she thought Joseph Ferrara might be under investigation.

On June 29, 2011, Joseph Ferrara testified to the Chapter 7 Trustee administering his bankruptcy case that he had been earning approximately $5,000.00 per month for the last two years from a company called Urgent Care for writing medical marijuana recommendations. The investigation identified Urgent Care, LLC as a company held in the name of Lauren Schwartz, the wife of Keith Schwartz. Bank records corroborate that Joseph Ferrara did indeed receive check payments from Urgent Care, LLC prior to filing for bankruptcy. During the pendency of Joseph Ferrara's bankruptcy from April 2011 thru September 2011, bank records indicate that Joseph Ferrara was paid approximately $68,157.46 by Urgent Care, LLC ($11,359.57 per month over a six month time period). This increase in payment from Urgent Care, LLC to Joseph Ferrara coincided with the take-over of Dr. Kevin Clemmer's pain management practice at the end of May 2011.

Prior to Joseph Ferrara's bankruptcy discharge in September 2011, the business receipts generated from the operation of the pain management practice and medical marijuana recommendations were deposited into bank accounts held in the name of Urgent Care, LLC. However, shortly after Joseph Ferrara's bankruptcy discharge, the deposit of business receipts shifted from Urgent Care, LLC bank accounts to a bank account held in the name of Central Rockies OBGYN, LLC, which was controlled by Joseph Ferrara.

● *Defendant's family and community ties make the risk of providing him at liberty on bail acceptable.*

The Government has no intention of injecting itself into the dissolution / family law proceedings of Lauren and Keith Schwartz. At the last status hearing held before the District Court on June 18, 2013, however, Attorney Lisa Wayne, counsel for Lauren Schwartz, showed government counsel the Petition for Dissolution which had been served on Lauren Schwartz on that date at the hearing. Ms. Wayne had previously contacted AUSA Menendez to determine whether Ms. Lauren Schwartz could return to her home at 700 Ptarmigan Ranch Road in Silverthorne, Colorado to retrieve her clothes, the childrens' clothes and toys, and other personal belongings. AUSA Menendez had no objection. At the status hearing on June 18, 2013, Ms. Wayne advised AUSA Menendez that Lauren Schwartz had been locked out of her own home by Keith Schwartz's parents, who own a part interest in the Ptarmigan Ranch Road home of Keith and Lauren Schwartz. Ms. Wayne advised that Ms. Schwartz, who had been in Florida at time of the indictment and returned for voluntary surrender, had no provisions for herself and her children. Ms. Schwartz and her parents who were in attendance were visibly upset. Ms. Wayne stated that since Ms. Schwartz had nowhere

in Colorado to stay, she would be forced to return to Florida with her children.  Mr. Schwartz  is party to the divorce filing.  Whether he had a role in Lauren Schwartz's lock-out from their Ptarmigan home is unknown; however, a fair inference can be made that Keith Schwartz was aware that action was being taken pursuant to the dissolution to keep his wife and children from their home.  The Government finds Mr. Schwartz's argument that he should be at liberty to spend time with his children who are now forced to reside in Florida to be incredible.

In conclusion, Keith Schwartz is a risk of non-appearance, and he poses a threat of danger and intimidation to his co-defendants and potential witnesses against him. The Government respectfully asks this Honorable Court to maintain the custodial status of Defendant Keith Schwartz by denying his Motion for Reconsideration.

Respectfully submitted this 24th day of June 2013.

        JOHN F. WALSH
        UNITIED STATES ATTORNEY

By:  *s/ MJ Menendez*
M.J. MENENDEZ
Assistant United States Attorney
United States Attorney's Offices
1225 17th Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0254
Fax:  (303) 454-0409
Email:  M.J.Menendez@usdoj.gov

By:  *s/ Alison Goldenberg*
ALISON GOLDBERG
Special Assistant United States Attorney
United States Attorney Office
1225 17th Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0100
Fax:  (303) 454-0403
Email:  Alison.Goldenberg@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2013, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT KEITH SCHWARTZ'S MOTION FOR RECONSIDERATION - ORDER OF DETENTION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

By: *s/ Lisa Tibbetts*
LISA TIBBETTS
Legal Assistant
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0409
E-mail: Lisa.Tibbetts@usdoj.gov
Office of the United States Attorney
District of Colorado